**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **TENET HEALTHCARE CORPORATION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** __3:22-cv-142____ |
| | § | |
| | § | |
| **OCCUPATIONAL SAFETY AND** | § | |
| **HEALTH ADMINISTRATION, and** | § | |
| **MARTY WALSH, UNITED STATES** | § | |
| **SECRETARY OF LABOR,** | § | |
| | § | |
| **Defendants.** | § | |

## <u>PLAINTIFF'S ORIGINAL COMPLAINT</u>

Plaintiff Tenet Healthcare Corporation ("Tenet" or "the Company") files this Original Complaint against Defendants Occupational Safety and Health Administration ("OSHA") and Marty Walsh, United States Secretary of Labor ("Secretary"), seeking a Temporary Restraining Order ("TRO"), Preliminary and Permanent Injunctions, an Order Denying Inspection Warrant, and a Declaratory Judgment.

## I.    <u>PARTIES</u>

1.    Plaintiff Tenet is a Texas corporation having its principal place of business at 14201 Dallas Parkway, Dallas, Texas 75254.

2.    Defendants Occupational Safety and Health Administration, and Marty Walsh, United States Secretary of Labor, are respectively an agency and officer of the United States Department of Labor, with offices located at 4849 North Mesa, Suite 200, El Paso, Texas 79912-5936.

---

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                                    **Page 1**

## II.   JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1346(a)(2) because this is a civil action arising under the laws of the United States and is against an agency or officer of the United States.

4.      Venue is proper in this Court pursuant 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events giving rise to the claim occurred in this judicial district.

## III.   INTRODUCTION

5.      Tenet moves this Court for a temporary restraining order and further relief against Defendants OSHA and the Secretary of Labor.  Tenet asks this Court to prevent OSHA from inspecting its The Hospitals of Providence Transmountain location ("THOP Transmountain") under the auspices of a National Emphasis Program, Directive 2021-03 (CPL 03) ("NEP"), rooted in the July 7, 2021 Emergency Temporary Standard ("ETS") that expired on December 27, 2021. An ETS is only legally valid for six months and, once expired, has no legal authority unless OSHA and the Secretary undergo and complete the process of enacting a permanent standard.  Defendants have begun the rulemaking process to make the ETS into a permanent standard, but they have not completed the process and issued a permanent rule.  Therefore, the NEP cannot be the basis for a lawful search warrant.

## IV.   FACTUAL BACKGROUND

6.      On March 4, 2022, Compliance Health and Safety Officer, Pedro Herrera ("CSHO Herrera"), sought to conduct an inspection of THOP Transmountain, located at 2000 Woodrow Bean Drive, El Paso, Texas  79911.  Exhibit 1, Declaration of Frank Davis, Esq., ¶ 2, App. 1. Frank Davis and Jeff T. Leslie of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., conducted an opening conference with the CSHO Herrera via telephone and inquired about the basis for this inspection. *Id*. Four representatives for THOP Transmountain were also present at the opening

conference: Mario Silva (Safety Officer), Damian Campos (Administrator on Duty), Rosa Varela (Infection Prevention), and Angel Godfrey (Patient Safety Officer). *Id.*  Mr. Davis and Mr. Leslie attempted several times to ascertain the authority under which CSHO Herrera was entitled to enter the facility. *Id.* at App. 2.  CSHO Herrera was unable to provide a lawful reason for entry and instead, made multiple vague references to the "National Emphasis Program".  *Id.*  When asked for the basis under the NEP, CSHO Herrera could not answer the question, but again, repeated he was there to inspect under the NEP.  *Id.*

7.     On March 4, 2022, Mr. Leslie sent an email to Area Director, Diego Alvarado, and Assistant Area Director, David Arrey, informing them of the unlawful attempt to enter the facility. *Exhibit 2*, Declaration of Jeff T. Leslie, Esq., ¶ 2, App. 3; *Exhibit 2A*, March 4, 2022 Email from Leslie, App. 6.

8.     On March 7, 2022, Assistant Area Director Gabriel Nolasco ("AAD Nolasco") sent an email to Mr. Davis and Mr. Leslie, attaching the July 7, 2021 NEP. *Exhibit 2*, Declaration of Jeff T. Leslie, Esq., ¶ 3, App. 3, 4; *Exhibit 2B*, March 7, 2022 Email from Nolasco, App. 7-44. AAD Nolasco conceded that the ETS "has been cancelled," but insisted entry to the facility based solely on the NEP.  *Id.* at App. 7.

9.     On March 7, 2022, Mr. Leslie responded to AAD Nolasco seeking clarification and the rationale for OSHA's position. Exhibit 2, Declaration of Jeff T. Leslie, Esq., ¶ 4, App. 4; *Exhibit 2C*, March 7, 2022 Email from Leslie, App. 45-47.  Mr. Leslie informed AAD Nolasco that the NEP is predicated on the existence of the ETS for Healthcare facilities as the enforcement mechanism, citing to the NEP pp. 3-4.  *Id.*  Mr. Leslie further alerted AAD Nolasco to the fact that the *Inspection Procedures for the COVID-19 ETS* is archived on OSHA's website.  *Id.*  The NEP

makes no other reference to any other authority or guidance that would entitle it to conduct an inspection of a healthcare facility.  *Id.*

10.     One week later, on March 14, 2022, AAD Nolasco sent an email to Mr. Leslie and Mr. Davis stating it was OSHA's opinion that the NEP remained in effect and attached a March 3, 2022 memorandum outlining three criteria for OSHA to conduct follow-up inspections on healthcare facilities.  *Exhibit 2*, Declaration of Jeff T. Leslie, Esq., ¶ 5, App. 4; *Exhibit 2D*, March 14, 2022 Email from Nolasco, App. 48-58.

11.     On March 15, 2022, AAD Nolasco called Mr. Leslie to discuss the basis for the inspection.  Declaration of Jeff T. Leslie, Esq., ¶ 6, App. 4.  Mr. Leslie informed AAD Nolasco that THOP Transmountain did not meet any of the three criteria for OSHA to conduct a follow-up inspection as it had not been previously cited, had not received an RRI or complaint investigation, nor had it been randomly selected for compliance with previous citations that were issued following a remote inspection.  *Exhibit 2*, Declaration of Jeff T. Leslie, Esq., ¶ 6, App. 4, 5; *Exhibit 2E*, March 16, 2022 Email from Leslie, App. 59, 60.  AAD Nolasco admitted that was true during the call.  *Id.*  He ended the call to get clarification, and then called Mr. Leslie again and stated the inspection was under the NEP, not the memorandum. *Id.* Mr. Leslie again explained the NEP could not be a basis for inspection because the ETS had expired and the hospital was fully vaccinated according to the Center from Medicare & Medicaid Services ("CMS") Interim Final Rule, which is outside of OSHA's jurisdiction.  *Id.*  THOP Transmountain is 100-percent in compliance with the CMS Vaccination Standard.  *Exhibit 2*, Declaration of Jeff T. Leslie, Esq., ¶ 7, App. 5.  As a practical matter, THOP Transmountain also has zero COVID-19 patients as of April 26, 2022.  *Id.*

12.     On March 24, 2022, Mr. Leslie and Josh Bernstein, Esq., Attorney with Office of the Solicitor, discussed the matter but could not reach an agreement.  Declaration of Jeff T. Leslie, Esq., ¶ 8, App. 5. On March 28, 2022, Mr. Leslie called Mr. Bernstein to offer a compromise solution to allow OSHA to inspect THOP Transmountain's 300 logs, COVID-19 logs, and COVID-19 policies. *Id.*  Mr. Davis and Mr. Leslie discussed the compromise with Mr. Bernstein again on April 11, 2022.  *Id.*   Mr. Bernstein declined on behalf of his client.  *Id.*   THOP Transmountain therefore now expects that OSHA will seek from this Court an inspection warrant. *Id.*

**V.     APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF[1]**

**A.     The Need for A Temporary Restraining Order.**

13.     THOP Transmountain realleges and incorporates all allegations set forth herein.

14.     To secure a preliminary injunction order, Plaintiffs must demonstrate (1) a substantial likelihood of success on the merits of their case; (2) a substantial threat of irreparable injury; (3) that the threatened injury outweighs any damage that the injunctive order might cause the Defendants; and (4) that the order will not be adverse to the public interest.  *Women's Med. Ctr. v. Bell,* 248 F.3d 411, 418–20 (5th Cir. 2001); *Dallas Cowboys Cheerleaders v. Scoreboard Posters*, Inc., 600 F.2d 1184, 1187 (5th Cir. 1979); *Barton v. Huerta*, 2014 WL 4088582, at *1 (N.D. Tex. Aug. 19, 2014) *aff'd*, 613 F. App'x 426 (5th Cir. 2015).

15.     THOP Transmountain requests a temporary restraining order, a preliminary injunction, and permanent injunction to prevent the unlawful inspection of its facility under the National Emphasis Program by OSHA.

---

[1] Pursuant to Local Rule CV-65, Plaintiff's THOP Transmountain Motion and Application for Temporary Restraining Order and Preliminary Injunction sets forth the application in further detail.

16.    THOP Transmountain will likely prevail on its claims, as clearly shown in this Complaint and subsequent Motion.

17.    Without this injunctive relief and denial of any inspection warrant, THOP Transmountain will suffer irreparable harm. Once the inspection occurs, the Company will be without legal remedy, for the federal courts and the Commission have held that citations (as opposed to penalties) cannot be vacated even if the warrant that purported to authorize an inspection, and from which the supporting evidence was derived, were later found to have been erroneously issued. Such citations have enormous collateral consequences, such as a ten-fold increase in subsequent penalties (29 U.S.C. § 666(a) (ten-fold increase for "repeated" violations), and exposure to two failure-to-abate daily penalties instead of one (29 U.S.C. § 666(d)).

18.    OSHA and the Secretary have no authority to inspect any company without authority to do so.  The Fourth Amendment of the United States Constitution protects employers from unjustified inspections. As explained above, OSHA seeks to inspect THOP-Transmountain based on its National Emphasis Program (NEP) targeting healthcare employers.

19.    The NEP authorizes inspection in two instances:  (1) when a high number of employees in the workplace are unvaccinated; or (2) to enforce the Healthcare Emergency Temporary Standard (ETS).  (June 28, 2021).  OSHA has no authority to inspect THOP under either designation.

   a.    *THOP Transmountain should not be subject to inspection under the vaccination element because 100-percent of employees comply with the CMS Vaccination Rule, which preempts OSHA's authority.*

20.    The Centers for Medicare and Medicaid Services (CMS) issued an administrative rule mandating full vaccination of all employees at Transmountain.  Omnibus COVID-19 Health Care Staff Vaccination, 86 Fed. Reg. 61555, pin cite (November 11, 2021).  The United States

Supreme Court upheld the Constitutionality of that rule on January 14, 2022.[2] *Biden v. Missouri*,

595 U.S. ___ (2022).   THOP Transmountain is 100-percent in compliance with the CMS

Vaccination Standard.  *Exhibit 2*, Declaration of Jeff T. Leslie ¶ 7, App. 5.

> **b.    *THOP Transmountain is not subject to inspection under the ETS because the temporary standard expired as a function of law on December 27, 2021.***

21.     OSHA's reliance on the NEP in its effort to conduct a physical inspection of the

THOP facility is misplaced.  The NEP directive specifically addresses enforcement of the ETS:

> This revised NEP cancels the original NEP issued on March 12, 2021, due to the issuance of OSHA's emergency temporary standard (ETS) for COVID-19 in healthcare.

DIR 2021–03 (CPL 03) (July 7, 2021).

22.     The NEP then goes on to adopt the Healthcare ETS by reference:

> - This NEP incorporates the new ETS for COVID-19 in healthcare.
> - For healthcare inspections, this NEP refers compliance safety and health officers (CSHOs) to the new OSHA Direction, DIR 2021-02 (CPL 02), *Inspection Procedures for the COVID-19 Emergency Temporary Standard*, June 28, 2021.

*Id.* at ABSTRACT-3.  *See also* Section VII:  "This replacement NEP incorporates the new ETS

for COVID-19 in healthcare."  *Id.* at p. 3.

23.     The OSHA Direction at DIR. 2021-02 requires CSHOs to specifically inspect for

compliance with the Healthcare ETS:

> This new Directive establishes OSHA's field inspection and enforcement procedures designed to ensure uniformity in enforcing the ETS when addressing workplace exposures to SARS-CoV-2, the virus that causes COVID-19 disease.

DIR 2021-02 (CPL 02) (June 28, 2021).

---

[2] On January 13, 2022, the United States Supreme Court rejected OSHA's effort to establish a vaccination rule. *National Federation of Business v. Secretary of Labor*, 595 U.S. ____ (2022).

24.     To resolve any ambiguity, the NEP directs OSHA to cite healthcare employers under the ETS for alleged violations:

> The ETS is enforceable on July 6, 2021, for most provisions, and July 21, 2021, for the three provisions for protective barriers, ventilation, and training. The provisions of the ETS will take precedence over citations of the general duty clause for healthcare establishments not exempt from the ETS.

DIR 2021–03 at p. 16.

25.     Fatal to OSHA's NEP and Directive thereunder is the fact that OSHA withdrew the non-recordkeeping portions of the ETS on December 27, 2021. *See* https://www.osha.gov/coronavirus/ets. Thus, the ETS cannot be used as the basis to inspect and determine whether THOP is in compliance with the temporary standard.[3] The purpose of the Occupational Safety and Health Act of 1970 (OSH Act), 29 U.S.C. 651 et seq., is "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." 29 U.S.C. 651(b). To this end, Congress authorized the Secretary of Labor (Secretary) to promulgate and enforce occupational safety and health standards under sections 6(b) and (c) of the OSH Act. 29 U.S.C. 655(b). These provisions provide bases for issuing occupational safety and health standards under the Act.

26.     Permanent standards under the OSH Act are subject to rule-making procedures that take many years to complete. As recognized by the Secretary in the preamble to the Healthcare ETS, the OSH Act also has an emergency provision that authorizes the Secretary to adopt emergency standards:

> The ETS provision, section 6(c)(1), exempts the Secretary from procedural requirements contained in the OSH Act and the Administrative Procedure Act, including those for public notice, comments, and a rulemaking hearing. *See, e.g.,* 29 U.S.C. 655(b)(3); 5 U.S.C. 552, 553. For that reason, ETSs have been referred

---

[3] On March 28, 2022, THOP Transmountain offered to show OSHA its recordkeeping logs. OSHA declined the offer.

to as the ``most dramatic weapon in [OSHA's] arsenal.'' *Asbestos Info. Ass'n/N. Am. v. OSHA*, 727 F.2d 415, 426 (5th Cir. 1984).

27.    While emergency temporary standards are a dramatic weapon in OSHA's arsenal, they are temporary by nature and expire within six months of adoption:

> ETSs are, by design, temporary in nature. Under section 6(c)(3), an ETS serves as a proposal for a permanent standard in accordance with section 6(b) of the OSH Act (permanent standards), and the Act calls for the permanent standard to be finalized within six months after publication of the ETS. 29 U.S.C. 655(c)(3); *see Fla. Peach Growers Ass'n*., 489 F.2d at 124. The ETS is effective "until superseded by a standard promulgated in accordance with" section 6(c)(3). 29 U.S.C. 655(c)(2).

*Id*. *See also Taylor Diving Salvage v. U.S. Dept. of Labor*, 537 F.2d 819, 820 (5th Cir. 1976) ("Section 6(c) of the Act was included to permit the Secretary to issue without notice or hearing Emergency Temporary Standards *to be effective for no more than six (6) months*." (emphasis added)).

28.    To this end, the Fifth Circuit has clearly and repeatedly held OSHA's authority to enforce an emergency temporary standard expires after six months of the temporary standard's adoption, unless OSHA adopts a permanent standard. *Asbestos Information Ass'n v. O.S.H.A*, 727 F.2d 415, 421 n.13 (5th Cir. 1984) ("In reviewing the ETS, we also must remain aware that the plain wording of the statute limits us to assessing the harm likely to accrue, or the grave danger that the ETS may alleviate, *during the six-month period that is the life of the standard*." (emphasis added)).

29.    Because the ETS expired on December 27, 2021 as an operation of law, and because OSHA withdrew its substantive, non-recordkeeping provisions on the same day, it cannot constitute the basis to support an inspection under the now-outdated and functionally impotent NEP as applied to healthcare facilities, such as THOP Transmountain.

    c.    *As an additional matter, OSHA cannot use the Section 5(a)(1)—also known as the General Duty Clause—as the basis to support a COVID-19-related inspection at THOP Transmountain.*

30.    OSHA cannot use the General Duty Clause ("GDC") as a basis to conduct a COVID-19 inspection of THOP.  OSHA uses the GDC clause to cite employers for hazards in the workplace that are not covered by a specific health and safety standard.

31.    Initially, at the inception of the COVID-19 Pandemic in 2020, the Secretary explained OSHA did not require an ETS to protect employees in the healthcare industry:

> On March 18, 2020, then-OSHA Principal Deputy Assistant Secretary Loren Sweatt responded to an inquiry from Congressman Robert C. "Bobby" Scott, Chairman of the House Committee on Education and Labor, regarding OSHA's response to the COVID-19 outbreak (OSHA, March 18, 2020).  In the letter, she stated that OSHA had "a number of existing enforcement tools" it was using to address COVID-19, including existing standards such as Personal Protective Equipment (PPE), Respiratory Protection, and Bloodborne Pathogens, as well as the General Duty Clause, 29 U.S.C. 654(a)(1).  [Hereinafter: "GDC"].  She also stated that OSHA was working proactively to assist employers by developing guidance documents.  And, given the existing enforcement tools, "we currently see no additional benefit from an ETS in the current circumstances relating to COVID-19," and "OSHA can best meet the needs of America's workers by being able to rapidly respond in a flexible environment."

Letter from Assistant Secretary Loren Sweatt to Congressman Robert C. "Bobby" Scott (March 18, 2020) at https://www.documentcloud.org/documents/6820346-03-18-2020-Scott-RE-COVID-19-1.html.

32.    In 2021, the Secretary reversed his position on the issue, and began development of an ETS at the direction of President Biden.  The justification for the development of the ETS explained the Secretary's rationale:

> In accordance with the executive order and Secretary Walsh's directive, OSHA has reviewed its May 2020 decision not to issue an ETS. For the reasons explained below, OSHA does not believe its prior approach--enforcement of existing standards and the General Duty Clause coupled with the issuance of nonbinding guidance--has proven over time to be adequate to `reduce the risk that workers may contract COVID-19" in healthcare settings. Given the grave danger presented by the hazard, OSHA now finds that this standard is necessary to

protect the healthcare employees who face the highest risk of contracting COVID-19 at work.

Occupational Exposure to COVID-19; Emergency Temporary Standard 86 FR 32376 (June 21, 2021).

33.     In this case, OSHA cannot rely on the GDC to conduct any enforcement action at THOP because the Secretary of Labor previously announced the agency had no authority under the OSH Act to address COVID-19-related hazards in the workplace.  That is, in the Preamble to the ETS, the Secretary explained the GDC is inadequate to address COVID-19 in the healthcare setting:

> Through its enforcement efforts to date, OSHA has encountered significant obstacles, revealing that existing standards, regulations, and the OSH Act's General Duty Clause are inadequate to address the COVID-19 hazard for employees covered by this ETS. The agency has determined that a COVID-19 ETS is necessary to address these inadequacies.

*See* ETS Preamble, Section I, Executive Summary.

34.     As part of the justification for the ETS, the Secretary also blames low vaccination rates as a rationale for establishing the temporary standard:

> [A]pproximately a quarter of healthcare workers have not yet completed COVID-19 vaccination (*King et al.*, April 24, 2021).  Nonetheless, vaccination is critical in combatting COVID-19, and the standard requires employers to provide paid leave to employees so that they can be vaccinated and recover from any side effects.  Additionally, certain workplaces and well-defined areas where all employees are fully vaccinated are exempted from all of the standard's requirements, and certain fully vaccinated workers are exempted from several of the standard's requirements.

*Id.*

34.     Again, THOP Transmountain employees are 100-percent in compliance with the CMS Vaccination Rule, which obviates the Secretary's rationale to inspect THOP Transmountain's COVID-19 response.

**B.      42 U.S.C. Section 1983.**

35.      Tenet re-alleges and incorporates all allegations set forth herein.

36.      Tenet also seeks declaratory judgment against Defendants for depriving Plaintiff of its substantive due process rights under the United States Constitution, 42 U.S.C. Section 1983, and the OSH Act of 1972 because OSHA and the Secretary have violated their own rule making process by attempting to enforce the NEP which was predicated on the now-expired ETS.

37.      Should OSHA and the Secretary be allowed to inspect THOP Transmountain under the pretenses of the NEP, THOP Transmountain would be without remedy as the inspection cannot be corrected by the Occupational Safety and Health Review Commission. THOP Transmountain, therefore, seeks a declaratory judgment from this Court regarding the enforcement of the NEP as a violation of THOP Transmountain's due process rights.

## VI.      PRAYER FOR RELIEF

Accordingly, the Court should:

a.      Issue a temporary restraining order prohibiting Defendants Occupational Safety and Health Administration and Marty Walsh, Secretary of the Department of Labor, from inspecting THOP Transmountain facility, located at 2000 Woodrow Bean Dr., El Paso, Texas  79911, based on the expired ETS or the NEP.

b.      Issue declaratory judgment against the enforcement of the NEP based on the now-expired ETS.

c.      Deny any ex parte request for an inspection warrant for that facility.

d.      Schedule a hearing on a preliminary and permanent injunction.

e.      Award Tenet its attorneys' fees and costs (to be separately applied for under the Equal Access to Justice Act).

## VII.  CONCLUSION

Plaintiff is willing to post a bond should the Court deem that appropriate.  Plaintiff further requests that the Court immediately grant this application for a temporary restraining order or set a hearing on this application at the earliest date and time possible.

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By:    /s/ Frank Davis
      FRANK D. DAVIS
      Texas State Bar No. 24031992
      frank.davis@ogletree.com
      JEFF T. LESLIE
      Texas State Bar No. 24091294
      jeff.leslie@ogletree.com

Preston Commons West
8117 Preston Road, Suite 500
Dallas, Texas  75225
(214) 987-3800 (Phone)
(214) 987-3927 (Fax)

**ATTORNEYS FOR PLAINTIFF
TENET HEALTHCARE CORPORATION**

## CERTIFICATE OF CONFERENCE

Plaintiff's counsel conferred with Defendant's counsel, Josh Bernstein on March 28, 2022 and April 11, 2022.  Mr. Bernstein indicated that Defendants are opposed to the relief sought.

      /s/ Jeff T. Leslie
      JEFF T. LESLIE

## CERTIFICATE OF SERVICE

This is to certify that on April 26, 2022, a true and correct copy of the above and foregoing pleading has been forwarded to Josh Bernstein, Esq., counsel for Defendant, 525 Griffin Street, Suite 501, Dallas, Texas  75202, via email.

      /s/ Jeff T. Leslie
      JEFF T. LESLIE